UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **CONCEPCION BENAVIDEZ and JORGE BUENO MARTINEZ** | : | **CIVIL ACTION NO.  3:11-cv-1263** |
| VS. | : | MAG. JUDGE KAREN L. HAYES |
| **KANSAS CITY SOUTHERN RAILWAY CO.** | : | |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment filed by defendant Kansas City Southern Railway Co. ("KCS").[1]  Doc. # 12.  The motion is opposed.  Doc. # 18.  For reasons to follow, the motion is **GRANTED in part and DENIED in part**.

## Background

On June 15, 2010, at approximately 3:20 p.m., plaintiff Concepcion Benavidez was driving her husband's 2008 Nissan Sentra north on Plum Street in West Monroe, Louisiana, on the way to pick up her daughter at daycare.  Complaint, Doc. # 1-1, ¶ 3; Mem. in Opp. to Mot. for Summ. Jdgt., Doc. # 18, p. 4.  At the same time, a KCS train with two locomotives, standing approximately seventeen feet high and twenty-four cars in length, was traveling eastbound towards Vicksburg, Mississippi, and approaching the subject public crossing at Plum Street.  Stmt. of Mat. Facts, Doc. # 12-1, ¶ 1.

The train crew, consisting of Calvin Williams, engineer, and Kevin Pullen, conductor, were operating the train at a speed of approximately thirty-five miles per hour at the time of the

---

[1] The above-captioned matter has been referred to the undersigned for the conduct of all further proceedings and the entry of judgment.  *See* Doc. # 8; 28 U.S.C. § 636(c).

accident, below the Federal Railroad Administration ("FDA") speed limit of sixty miles per hour, and a KCS authorized speed limit of fifty-five miles per hour. Aff. of McDonald, Doc. # 12-3, ¶¶ 11-14; Aff. of Williams, Doc. # 12-4, ¶ 7; Aff. of Pullen, Doc. # 12-5, ¶ 6. The crossing at Plum Street was clearly marked with reflectorized, white crossbuck warning signs. Photograph, Doc. # 12-8; Dep. of Benavidez, Doc. # 12-10, pp. 67, 69.

As plaintiff approached the crossing, she was traveling at approximately ten miles per hour and began to slow her vehicle, with her foot on the brake, approximately five to six car lengths from the crossing. Dep. of Benavidez, Doc. # 12-10, pp. 73-74. Plaintiff first looked to her right because to her left her view of the track was obscured by trees. *Id.* pp. 75-76. She saw that the tracks were clear on her right, and as she turned to look to her left, she saw the train just before it made impact with her vehicle. Doc. # 12-10, pp. 75, 85. As a result of the collision, plaintiff suffered injuries including broken ribs, cuts, and bruising. Doc. # 1-1, ¶ 7; Doc. # 12-10, pp. 92-96.

On June 14, 2011, plaintiff Benavidez and her husband, plaintiff Jorge Bueno Martinez, filed the instant suit in the Fourth District Court for the Parish of Ouachita, State of Louisiana. *See* Doc. # 1-1. On July 5, 2011, the case was removed to the United State District Court for the Western District of Louisiana on the basis of diversity jurisdiction, 28 U.S.C. § 1332. *See* Doc. # 1.

The complaint alleges that the accident was exclusively due to the negligence of KCS in the following ways:

a. failure of the train to blow its warning signal as required by law;

b. failure of its train to travel through the intersection at a proper and safe speed

    required by the condition of the subject crossing;

    c. failure to provide adequate, operational, and active crossing gates, flashing lights and other appropriate warning signs and signals at the subject railroad crossing;

    d. failure to provide and maintain a clear and visible line of sight at the subject railroad crossing for oncoming vehicles of approaching trains at the time of the accident;

    e. failure to trim back and clear brush from the areas directly adjacent to the subject railroad crossing, which are KCS right-of-ways, thereby disallowing an unfettered view of any oncoming trains; and

    f. other acts of negligence which will be proven at the trial of this matter.

*Id.* ¶ 6. Plaintiffs seek recovery for the injuries, medical bills, pharmaceutical bills, and pain and suffering sustained by Benavidez, and for "loss and use of his wife in her normal capacity" and damages to the vehicle for Bueno Martinez. Doc. # 1-1, ¶ 9.

    On April 16, 2012, KCS filed the instant motion for summary judgment seeking dismissal of plaintiffs' claims in their entirety. *See* Doc. # 12. The motion argues that Benavidez's negligence was the sole cause of the accident, and that the defendant complied with all relevant statutory and regulatory duties, including its duties to place reflectorized crossbucks at the subject crossing, sound its horn before entering the crossing, and operate the train below the applicable speed limits. *See* Doc. # 12-2. The defendant also argues that plaintiffs have failed to present sufficient evidence as to whether there existed a "dangerous trap" at the Plum Street crossing. Doc. # 19-1, pp. 8-10. Plaintiffs oppose the motion. *See* Doc. # 18. The matter is now before the court.

## **Summary Judgment Principles**

    Summary judgment is proper if the movant demonstrates that "there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Gray v. Wal-Mart Louisiana*, L.L.C., No. 11–30946, 2012 WL 2136880, *1 (5th Cir. June 13, 2012). A fact is "material" if its resolution could affect the outcome of the action. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007). A dispute about a material fact is "genuine" only if a reasonable jury could return a verdict for the non-moving party. *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id*.

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the nonmovant. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; must disregard all evidence favorable to the moving party that the jury is not required to believe; and must give credence to the evidence favoring the non-moving party as

well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## Discussion

Louisiana courts employ a duty-risk analysis to weigh a plaintiff's negligence claim. *Long v. State ex rel. Dept. of Transp. and Development*, 916 So.2d 87, 101 (La. 2005) (citation omitted). Under the duty-risk analysis, the plaintiff must establish five elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard; (2) proof that the defendant's conduct failed to conform to the appropriate standard; (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) proof of actual damages. *Id.* Specific to this case, the undersigned will focus on whether the defendant breached any duties to the plaintiffs because the motion for summary judgment centers around this issue.

The defendant alleges it complied with its duties to place reflectorized crossbucks at the subject crossing, operate the train below the applicable speed limits, and sound its horn before entering the crossing. *See* Doc. # 12-2. The defendant also argues that plaintiffs have not

presented sufficient evidence as to whether there existed a "dangerous trap" at the Plum Street crossing. Doc. # 19-1, pp. 8-10. The undersigned will consider each claim in turn.

1. **Failure to Place Adequate Warning Signs at the Plum Street Crossing**

The defendant's motion for summary judgment alleges that despite the plaintiffs' third claim, it complied with its duty under Louisiana law to place a reflectorized crossbucks warning sign at the Plum Street crossing. *See* Doc. # 12-2, p. 20. La. Rev. Stat. § 32:168 provides, in part:

> Any person, firm, or corporation controlling any railroad track which intersects a public road or street at grade crossings, except those contained in the maintenance system of the department, shall erect and maintain a "Railroad Cross Buck" sign at the crossings above referred to which shall be white with the "Railroad Crossing" in black letters. The sign shall be reflectorized.

La. Rev. Stat. § 32:168(A).

Here, the defendant has provided uncontroverted evidence that reflectorized crossbucks were in place at the crossing on the day of the accident. This evidence takes the form of photographs taken by the West Monroe Police Department the day of the accident, photographs taken the day after the accident, and plaintiff Benavidez's own testimony. *See* Photograph, Doc. # 12-8; Photograph, Doc. # 12-9; Dep. of Benavidez, Doc. # 12-10, pp. 67, 69. The plaintiffs have made no attempt to refute this evidence in their opposition. *See* Doc. # 18. Thus, the defendant has met its burden of demonstrating the absence of a genuine dispute of material fact, and summary judgment is GRANTED as to this issue.

2. **Failure to Operate the Train below the Applicable Speed Limits**

The defendant also requests summary judgment on the issue of whether the KCS crew operated the train well below the authorized federal speed limit, relating to plaintiff's second

claim.  *See* Doc. # 12-2, p. 21.  The defendant has produced affidavits from the train crew, who were all located in the lead locomotive, and from expert witness Joe Michael McDonald, to establish that the train was traveling at approximately thirty-five miles per hour at the time of the accident.  Aff. of Williams, Doc. # 12-4, ¶ 7; Aff. of Pullen, Doc. # 12-5,  ¶ 6; Aff. of McDonald, Doc. # 12-3, ¶¶ 11-14.  The track which the train was traversing is a Class IV track, which has a Federal Railroad Administration speed limit of sixty miles per hour and a KCS authorized speed limit of fifty-five miles per hour.  *Id.*  Furthermore, the applicable federal regulation preempts state law claims of negligence where the train operates below the maximum allowable speed.  *See* 49 C.F.R. § 213.9(a); *Furlough v. Union Pacific R.R. Co.*, No. 33,658 (La. App. 2 Cir. 8/31/00); 766 So.2d 751, 759-60 (citing several sources).  The plaintiffs have again failed to identify anything in the record to support its claim, *see* doc. # 18; therefore, summary judgment is GRANTED on this issue as well.

**3.      Failure to Properly Sound the Train's Horn before Entering the Crossing**

Next, the defendant alleges that the train properly sounded its horn prior to entering the Plum Street crossing, contradicting plaintiff's first claim.  Federal law requires that a locomotive's horn be sounded at least fifteen seconds prior to entering a public grade crossing.  49 C.F.R. § 222.21.

There is a disputed issue of material fact as to whether the train properly sounded its horn during its approach to the Plum Street crossing.  The affidavits of the train crew members, Calvin Williams and Kevin Pullen, indicate that the train sounded its horn beginning at least fifteen seconds prior to entering the crossing.  Aff. of Williams, Doc. # 12-4, ¶¶ 7-10; Aff. of Pullen, Doc. # 12-5,  ¶¶ 7-9.  However, in the accident report, Williams' statement said nothing about

7

the train sounding the horn. Doc. # 12-13. Officer John Michael Allen originally stated in an affidavit that he would have included such information in the report had Williams given it to him; but in a subsequent declaration, Officer Allen claims it is possible he would have left the information out of the report. *See* Aff. of Off. Allen, Doc. # 18-2, ¶ 11; Dec. of Off. Allen, Doc. # 19-2, ¶ 2. Eyewitnesses Edward Bailey and Trevor Land stated in sworn declarations that they heard the train blow the horn loudly and continuously before the accident.[2] Dec. of Bailey, ¶¶ 5, 7; Dec. of Land, ¶¶ 5, 7.

KCS's expert, Joe Michael McDonald, concluded that the horn was blown. Aff. of McDonald, Doc. # 12-3, ¶ 15. Relying upon data from the train's event recorder, McDonald opined that the horn was sounded fifteen seconds before entering the crossing, in compliance with the applicable federal regulations. *Id*.

In opposition to the motion, in addition to Benavidez's own deposition testimony denying that she heard the horn, the plaintiffs have produced affidavits from two witnesses, Johnny Walterson and Wendy Freeman Aulds, stating that they did not hear the horn and that they would have heard it had it been blowing. Dep. of Benavidez, Doc. # 12-10, pp. 77-78; Aff. of Walterson, Doc. # 18-4; Aff. of Aulds, Doc. # 12-5.

In light of this evidence, the court finds a genuine dispute of material fact with respect to plaintiffs' claim for negligent failure to sound the train's horn, and summary judgment on this issue is therefore DENIED.

**4.      Failure to Maintain a Clear Line of Sight and Failure to Trim Back Brush**

---

[2] The declarations of Bailey and Land do not specifically state that the horn was blowing at least fifteen seconds before the crossing, in compliance with federal law. *See* Dec. of Bailey, ¶¶ 5, 7; Dec. of Land, ¶¶ 5, 7.

Finally, in their opposition to the defendant's motion for summary judgment, the plaintiffs argued that there was a genuine issue of material fact as to whether the crossing was a "dangerous trap." This argument is relevant to plaintiffs' fourth and fifth claims. Specifically, the plaintiffs point to Benavidez' deposition testimony, where she stated she first looked to her right because there were "many trees" to her left. Doc. # 18, p. 3. They also claim the photograph attached to the summary judgment motion shows that it is only when a motorist is within a couple of car lengths from the track that he or she could see an oncoming train. *Id.*

The "dangerous trap" doctrine is a jurisprudentially created rule for determining whether a particular crossing presents an unreasonable risk of harm to the motoring public. *See Fry v. Southern Pacific Transp. Co.*, No. 30,540 (La. App. 2d Cir. 6/24/98); 715 So.2d 632, 635 (citations omitted). "A railroad crossing is considered unusually dangerous when the view of the motorist is so obstructed as to require that he place himself in a position of peril precariously near the tracks before he has a view of the oncoming train." *Id.*

Here, the plaintiffs have openly admitted that a motorist at the Plum Street crossing could have sufficient vision down the track at a "couple of car links [sic]." Doc. # 18, p. 3. The undersigned finds that a distance of two car lengths is nowhere near the "position of peril" contemplated by the Louisiana cases. *See Brackin v. Kansas City Southern*, 331 So.2d 237, 238-39 (La. App. 3d Cir. 1976) (holding that a railroad crossing where a driver could stop his vehicle nine feet from the edge of the track and have an adequate view of the track was not a dangerous trap). Thus, there is no genuine issue of material fact as to whether the Plum Street crossing was a dangerous trap, and summary judgment is GRANTED on this issue.

## Conclusion

For the foregoing reasons, KCS's motion for summary judgment [doc. # 12] is hereby GRANTED insofar as it seeks dismissal of plaintiffs' claims for failure to place adequate warning signs at the Plum Street crossing, failure to operate the train below the applicable speed limit, and failure to maintain a clear line of sight/failure to trim back brush (dangerous trap claim). Fed. R. Civ. P. 56. Otherwise, the motion is DENIED.

THUS DONE AND SIGNED at Monroe, Louisiana, this 26th day of June, 2012.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE